**ESTATE OF Rosalie HARRIS,**
**Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (SUNOCO, INC. and ESIS/SIGNA), Respondents.**

Commonwealth Court of Pennsylvania.

Argued March 1, 2004.
Decided March 24, 2004.

Richard W. Rosenblitt, Philadelphia, for petitioner.

Charles S. Katz, Philadelphia, for respondent.

BEFORE: McGINLEY, J., LEAVITT, J., and McCLOSKEY, Senior Judge.

OPINION BY Judge LEAVITT.

The estate of Rosalie M. Harris (Estate) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) holding that the Estate was not eligible to pursue a claim for specific loss benefits on account of Harris' permanent injury that occurred before her death. Affirming the decision of the Workers' Compensation Judge (WCJ), the Board reasoned that Harris, while alive, was eligible to pursue a specific loss benefit for the amputation of her leg but this eligibility did not survive her death by transfer to the Estate. We affirm.

The facts, which were developed by stipulation of the parties, are as follows. On September 27, 1999, Harris was involved in a serious motor vehicle accident while in the course of her employment with Sunoco, Inc. (Employer). She remained hospitalized as a result of these injuries until her death on November 26, 1999. Ten days before Harris' death, her right leg, afflicted by gangrene, was amputated above the

knee. Pursuant to a Temporary Notice of Compensation Payable, Employer covered all of Harris' medical expenses, paid her total disability benefits until her death and paid the statutory funeral allowance on account of her death.

At the time of her death, Harris was 61 years of age and separated from her husband, John Harris. She also left five children, each of whom was over the age of 23 years and not dependent upon her for support.[1] Harris' will names her children as heirs, to share equally in her residuary estate; her will expressly excludes her estranged husband from any distribution.

On January 25, 2002, the Estate filed a petition for review requesting that Harris' injuries be resolved to a specific loss. The petition was opposed by Employer, and a hearing was held before a WCJ. The sole question before the WCJ was whether an estate is entitled to claim a specific loss benefit where the decedent was receiving total disability benefits at the time of death and died of causes related to a compensable injury. Because Harris had no dependents, as that term is defined in the statute, and died from a work-related injury, as opposed to another cause, the WCJ held that the Estate could not meet the prerequisites for an award of specific loss benefits arising from the amputation of Harris' lower right leg. The Estate appealed, and the Board affirmed. The Estate now petitions for our review.

On appeal,[2] the Estate asserts that the Board erred as a matter of law. The Estate raises one question, believed to be a question of first impression, for our consideration. It contends that because Employer will not pay death benefits, inasmuch as Harris did not leave any dependents, the Estate is eligible to claim specific loss benefits. In response, Employer contends that specific loss benefits may be awarded after the death of an injured employee only where the death is unrelated to the work-related injury and only to a statutory dependent of a deceased employee, not an estate.

Section 306 of the Pennsylvania Workers' Compensation Act (Act), Act of June, 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 511, 512 and 513, recognizes three types of disability: total disability,[3] partial disability[4] and permanent disability,[5] commonly known as "specific loss."[6] As a general matter, "disability," a term that is not defined in the Act, is considered a loss of earning power. *Harbison–Walker v. Workmen's Compensation Appeal Board,* 40 Pa.Cmwlth. 556, 397 A.2d 1284 (1979). Thus, Pennsylvania is considered a "wage loss" jurisdiction where disability payments are made for the duration of a claimant's inability to labor. This is not the case, however, with a permanent dis-

---

1. Richard Petolla, one of Harris' surviving children, filed a fatal claim petition, alleging that he was a dependent even though he was over 23 years in age. He receives social security disability payments, but he has never been declared incompetent. He withdrew his petition prior to the Estate filing its petition.

2. In reviewing Board decisions, this Court's standard of review is limited to a determination of whether there was an error of law committed, whether necessary findings of fact are supported by substantial evidence, or whether constitutional rights were violated.

*Russell v. Workmen's Compensation Appeal Board (Volkswagen of America),* 121 Pa. Cmwlth.436, 550 A.2d 1364 (1988).

3. Section 306(a) of the Act, 77 P.S. § 511.

4. Section 306(b) of the Act, 77 P.S. § 512.

5. Section 306(c) of the Act, 77 P.S. § 513.

6. "Specific loss" does not appear in the Act; it is the term popularly used to describe the disability payments to be made where a claimant has suffered a permanent injury.

ability. "Disability resulting from permanent injury"[7] is paid without regard to whether the permanent injury has actually caused a wage loss. For permanent injuries, the Act has established a schedule of compensation for each category of injury, such as the loss of a body part by amputation, and this compensation covers *all* disability connected with the permanent injury. *Killian v. Heintz Div. Kelsey Hayes,* 468 Pa. 200, 360 A.2d 620 (1976). Thus, a claimant who has received a specific loss benefit for the amputation of a finger may not reinstate benefits when arthritic pain later develops at the site of the amputation. *Czap v. Workmen's Compensation Appeal Board (Gunton Corp.),* 137 Pa. Cmwlth. 612, 587 A.2d 49 (1991). On the other hand, the award of a specific loss benefit does not bar a claim for partial or total disability[8] for "separate and distinct disabilities" stemming from injuries to separate and distinct body parts. *BCNR Mining Corp. v. Workmen's Compensation Appeal Board (Hileman),* 142 Pa.Cmwlth. 588, 597 A.2d 1268 (1991).

In sum, had Harris survived her injuries, she could have pursued a specific loss benefit for the loss of her right lower leg. Her benefit, established in Section 306(c)(5) and (6) of the Act, would have been as follows:

> (5) For the loss of a lower leg, sixty-six and two-thirds per centum of wages during three hundred fifty weeks.[9]

> (6) For the loss of a leg, sixty-six and two-thirds per centum of wages during four hundred ten weeks.

77 P.S. § 513(5) and (6). Because Harris also suffered multiple fractures to her left leg and left hip, these separate injuries were, presumably, separately compensable for as long as they rendered her unable to work. *BCNR Mining.*[10]

Where, as here, an employee is fatally injured in the course of employment, Section 307 of the Act, 77 P.S. §§ 542, 561, 562, provides that the employee's compensation benefits survive in the form of "fatal claim" benefits. Such benefits accrue on the date of death and can be claimed only by a surviving spouse, children, parents, brothers and sisters; however, these persons must also demonstrate that they were dependents of the deceased employee. Section 307 of the Act, 77 P.S. § 562. In this case, none of Harris' survivors could show dependency and, thus, were not eligible for fatal claim benefits.[11]

---

7. Section 306(c) of the Act, 77 P.S. § 513.

8. It was established in *Lente v. Lucci,* 275 Pa. 217, 119 A. 132 (1922) that compensation for the permanent disability, *e.g.,* loss of a leg, does not bar continued disability payments for an injury "separate and distinct" from that covered by the specific loss benefit.

9. Harris' average weekly wage at the time of her accident were $1,137.22 leaving a weekly disability rate of $588.04. The Estate asserts that should receive $241,080 ($588 × 410 weeks) plus 10% statutory interest. Because Harris' leg was amputated above the knee, the Estate claims that the permanent injury was for a leg, not a lower leg.

10. Section 306(d) of the Act, 77 P.S. § 513, resolves situations in which a single incident gives rise to both a permanent injury and "separate and distinct injuries." The period of temporary total disability from the separate injuries runs first; thereafter, the compensation specified in Section 306(c) of the Act for the permanent injury begins to run for the statutorily-prescribed time. *North Star Transfer Co. v. Workmen's Compensation Appeal Board,* 45 Pa.Cmwlth. 180, 404 A.2d 1382 (1979) (wherein specific loss benefits were suspended until the total disability payments terminated).

11. A widower must show he cannot support himself and was dependent upon his wife for support at the time of her death to be eligible for benefits. However, in *Oknefski v. Workmen's Compensation Appeal Board,* 63 Pa. Cmwlth. 450, 439 A.2d 846 (1981), this Court held that the widow's standard for compensation under Section 307 of the Act applies to

The survivability of specific loss benefits is treated separately in the Act. Section 306(g) provides that specific loss benefits can be paid to the same category of dependent persons listed in Section 307 of the Act but only where "the employee [should] die from some other cause than the injury...." 77 P.S. § 541. Section 306(g)(7) further provides that

> [i]f there be no dependents eligible to receive payment under this section then the *payments shall be made to the estate of the deceased but in an amount not exceeding reasonable funeral expenses* as provided in this act or if there is no estate, to the person or persons paying the funeral expenses of such deceased in an amount not exceeding reasonable funeral expenses as provided in this act.

77 P.S. § 541(7) (emphasis added).

■ When a claimant is entitled to both total disability and a specific loss benefit for the same injury, the claimant has the right to choose which benefit will provide the greatest advantage. *Mosier v. Workmen's Compensation Appeal Board (Jessop Steel Co.)*, 144 Pa.Cmwlth. 527, 601 A.2d 1319, 1321–1322 (1992).[12] Our Supreme Court has held that a statutory dependent of a deceased employee can also make this election and choose specific loss benefits in lieu of total disability. *Reed v. Workmen's Compensation Appeal Board (Stork Diaper Service, Inc.)*, 499 Pa. 177, 452 A.2d 997 (1982). However, in *Reed,* the claimant permitted to make this election was the dependent of an employee whose death was unrelated to his injury.

Harris died without making an election for specific loss benefits in lieu of total disability. The Estate reasons that if a dependent can make this election on behalf of the deceased employee, as in *Reed,* then an estate also should be able to make this election on behalf of the deceased employee. The Estate contends that nothing in the Act forbids this logic. Further, the Estate contends that Section 410 of the Act provides a separate basis for the payment of specific loss benefits to an estate. We disagree.

Section 410 of the Act provides in relevant part as follows:

> In case any claimant shall die before the final adjudication of his claim, the amount of compensation due such claimant *to the date of death* shall be paid to the dependents entitled to compensation, or, if there be no dependents, then to the estate of the decedent.

77 P.S. § 751 (emphasis added). Accordingly, had Harris died before her final total disability payment was made, Employer would still have to make that payment "to the date of death." The meaning of Section 410 has been definitively construed by this Court as follows:

> Section 410 of the Act is a general provision which states that benefits due to a claimant who dies before final adjudication of his or her claim are payable to the claimant's estate or dependents. *This statutory provision does not provide an independent or supporting basis for a specific loss award as Claimant maintains.*

*Endres v. Workmen's Compensation Appeal Board (City of Philadelphia)*, 677 A.2d 901, 903 (Pa.Cmwlth.1996). Indeed, the issue in *Endres* was

---

widower's, *i.e.*, living with the claimant at the time of the claimant's death. Children are entitled to benefits until age 18 unless they are full-time students, in which case, benefits terminate at age 23. Section 307 of the Act, 77 P.S. § 562.

**12.** This election is made where the permanent injury causes a total disability; it does not apply to the *Lente v. Lucci* situation where an incident causes separate and distinct injuries.

whether the WCJ properly denied specific loss benefits to claimant where Decedent suffered a total disability and a specific loss and his death resulted from causes related to the work injury.

*Id.* at 902. Except that the claimant in *Endres* was a dependent, *Endres* is on all fours with this case.

The holding in *Endres* is firmly grounded in precedent. In *Burns v. International Security Services, Inc. v. Workmen's Compensation Appeal Board (Crist)*, 79 Pa.Cmwlth.340, 469 A.2d 336, 338 (1984), this Court held "that a prerequisite to payment of specific loss payments to survivors is that the claimant's death was from a cause other than the [work-related] injury." In *City of Scranton v. Workmen's Compensation Appeal Board (Rideski)*, 536 Pa. 161, 638 A.2d 944 (1994), the Pennsylvania Supreme Court held that a dependent, a widow, could collect a specific loss benefit *awarded to decedent prior to his death from causes unrelated to his injury* because his death was treated as a "termination" of his total disability, thereby triggering the obligation to pay his specific loss benefit. The Estate contends that these cases stand only for the proposition that a claimant cannot collect both fatal claim and specific loss benefits after the death of an injured employee. Since the Estate seeks payment of specific loss benefits alone, it contends that its claim does not contradict the principles established in *Endres*, *Burns* and *City of Scranton*. However, the holdings in these cases are not so limited; rather, they stand for

the legal conclusion that Section 306(g) of the Act governs the payment of specific loss benefits and that such benefits may be paid only where death of the employee is from a cause other than the work injury.

■ We disagree also with the Estate's contention that the Act does not prohibit payment of a specific loss benefit in these circumstances. Section 306(g) of the Act expressly limits the survival of specific loss benefits to a situation where death is "from some other cause than the injury...." 77 P.S. § 541. Under the statutory construction principle *expressio unius est exclusio alterius*, we must find that because the General Assembly conditioned payment of specific loss benefits on a death by cause *other* than the work injury that it intended to exclude the alternative, *i.e.*, death by the work injury. There is a sound reason for this canon of construction; without it, the Act would have been twice as long because its drafters would have been required to couple every declarative sentence with its obverse.[13]

■ If Harris had followed the *North Star* paradigm, 404 A.2d at 1384, as she likely would have had she lived,[14] her specific loss benefits would have been suspended until her total disability terminated. Where a claimant is awarded specific loss and dies without a dependent, the specific loss benefit is to be made "to the estate of the deceased but *in an amount not exceeding reasonable funeral expenses* ...." Section 306(g) of the Act, 77 P.S.

---

**13.** In this case, for example, Section 306(g) would have to read "benefits will be paid to survivors of an employee whose death is *not* by the injury but by some cause *other* than the injury" in order to avoid the Estate's proffered construction.

**14.** *See* David B. Torrey, Andrew E. Greenberg, Workers' Compensation: Law and Practice § 5:149 (2002), wherein it explained that

under "crafty application" of Section 306(g) of the Act it is advisable to suspend specific loss benefits until termination of total disability with the expectation that if claimant died while in total disability, dependents could receive specific loss benefits. However, Torrey notes that this paradigm only works if the claimant dies of a cause other than the work injury.

§ 541(7) (emphasis added). Claimant died without dependents. Accordingly, Employer's obligation to pay specific loss benefits, had they been awarded prior to Harris' death, would have been satisfied by the payment it has already made to the Estate for reasonable funeral expenses. Accordingly, there is nothing further to be gained by making a specific loss benefit award to the Estate.

The Estate would have this Court create a new category of claim, *i.e.*, payment of specific loss benefits to an estate, not a dependent, where death is caused by the work-related injury and not by another cause. This claim has no grounding in the language of the Act and is at odds with case law precedent. The General Assembly has spoken, and we are so bound.

Accordingly, we affirm the Board.

### ORDER

AND NOW, this 24th day of March, 2004, the order of the Workers' Compensation Appeal Board in the above-captioned matter dated August, 20, 2003, is hereby affirmed.