IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kristina Steets,                                    :
                 Petitioner                  :
                                  :
              v.                               :
                                    :
Celebration Fireworks, Inc. (Workers'    :
Compensation Appeal Board),               :    No. 512 C.D. 2022
                 Respondent             :    Argued: March 8, 2023


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE ELLEN CEISLER, Judge
                HONORABLE LORI A. DUMAS, Judge
                HONORABLE STACY WALLACE, Judge


OPINION BY
JUDGE COVEY                          FILED: May 8, 2023


       Kristina Steets (Claimant) petitions this Court for review of the Workers' Compensation (WC) Appeal Board's (Board) April 26, 2022 order affirming the WC Judge's (WCJ) decision that granted her Claim Petition for WC benefits (Claim Petition), but denied her Petition for Penalties (Penalty Petition) and Petition to Review Compensation Benefits (Review Petition).  Claimant presents one issue for this Court's review: whether specific loss[1] benefits are payable following an injured worker's death resulting from a work injury.  After review, this Court affirms.

---

[1] "A specific loss is either (1) the loss of a body part by amputation or (2) the permanent loss of use of an injured body part for all practical intents and purposes." *Miller v. Workers' Comp. Appeal Bd. (Wal-Mart)*, 44 A.3d 726, 728 (Pa. Cmwlth. 2012) (quoting *Jacobi v. Workers' Comp. Appeal Bd. (Wawa, Inc.)*, 942 A.2d 263, 264 n.1 (Pa. Cmwlth. 2008)).

On June 30, 2017, while working for Celebration Fireworks, Inc. (Employer), an explosion occurred when Claimant inserted a fuse into a fireworks display causing her traumatic injuries. On March 13, 2018, Employer filed a Notice of Compensation Payable accepting liability for Claimant's injuries, and paid Claimant temporary total disability benefits.

Claimant filed the Claim and Review Petitions seeking to define the nature and extent of her injuries, alleging therein that the loss of use injury was an injury separate and apart from the brain injury. Employer opposed both Petitions. After several hearings, by October 7, 2019 order, the WCJ granted the Claim and Review Petitions and amended Claimant's work injuries to include "multiple body parts amputation, traumatic brain injury/anoxic encephalopathy with significant cognitive impairment, septic shock, respiratory failure, dysphagia, quadriparesis, bowel and bladder incontinence, and loss of use of both arms." *See* Reproduced Record (R.R.) at 235a. Relevant here, the WCJ found that Claimant lost the use of her arms for all practical intents and purposes, and that the impairment was permanent. The WCJ declared that once Claimant's total disability benefits ceased, Claimant would be entitled to specific loss benefits under Section 306(c)(3) and (25) of the WC Act (Act).[2] Employer appealed to the Board. On October 8, 2020, the Board affirmed the WCJ's decision. *See* R.R. at 245a. On November 5, 2020, Employer appealed to this Court.

On November 28, 2020, Claimant died as a result of complications from bilateral pneumonia caused by her work-related respiratory deficiency. *See* R.R. at 85a. Employer ceased payment of total disability benefits upon Claimant's death. On May 24, 2021, this Court affirmed the Board's October 8, 2020 order. *See Kemps*

---

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 513(c)(3), (25). Claimant's "specific loss benefits for both arms amounted to 840 weeks of compensation." WCJ Dec. at 4 (Claimant's Br. Appendix A-13).

2

*v. Steets (Workers' Comp. Appeal Bd.)*, 257 A.3d 1271 (Pa. Cmwlth. 2021) (*Steets I*) (wherein this Court concluded that substantial evidence supported the WCJ's determination that Claimant lost the use of both her arms for all practical intents and purposes, and Claimant was entitled to specific loss benefits after total disability benefits ceased).

On March 31, 2021, Claimant's estate (Estate)[3] filed the Claim, Review, and Penalty Petitions, seeking (1) payment of Claimant's funeral expenses, (2) payment of Claimant's specific loss benefits, and (3) penalties based upon Employer's failure to pay the previously awarded specific loss benefits. On December 15, 2021, the WCJ granted the Claim Petition - ordering Employer to pay Claimant's funeral expenses - and dismissed the Review and Penalty Petitions. The Estate appealed to the Board, which, on April 26, 2022, affirmed the WCJ's decision. The Estate appealed to this Court.[4]

Initially,

> "[t]he . . . Act is remedial legislation designed to compensate claimants for earnings loss occasioned by work-related injuries."[5] *Triangle B*[*ldg.*] *C*[*tr. v. Workers' Comp. Appeal Bd. (Linch)*], 746 A.2d [1108,] 1111 [(Pa. 2000)]. The statute seeks "to provide recompense commensurate with the damage from

---

[3] Employer represents in its brief that the Estate was "raised by Claimant's non-dependent sister." Employer Br. at 6.

[4] "[This Court's] review determines whether there has been a violation of constitutional rights, whether errors of law have been committed, whether [B]oard procedures were violated, or whether necessary findings of fact are supported by substantial evidence." *Bryn Mawr Landscaping Co. v. Workers' Comp. Appeal Bd. (Cruz-Tenorio)*, 219 A.3d 1244, 1252 n.5 (Pa. Cmwlth. 2019). When an "appeal requires [this Court] to interpret statutory provisions[,] . . . it presents a pure question of law over which our standard of review is *de novo* and our scope of review is plenary." *City of Phila. Fire Dep't v. Workers' Comp. Appeal Bd. (Sladek)*, 195 A.3d 197, 207 (Pa. 2018) (italics added).

[5] In Section 301(c)(1) of the Act, the General Assembly defined the term *injury* as "an injury to an employe, . . . arising in the course of his employment and related thereto, and . . . death resulting from such injury and its resultant effects, and occurring within [300] weeks after the injury." 77 P.S. § 411(1).

accidental injury, as a fair exchange for relinquishing every other right of action against the employer." *Rudy v. McCloskey Co.*, . . . 35 A.2d 250, 253 ([Pa.] 1944) . . . .

*City of Erie v. Workers' Comp. Appeal Bd. (Annunziata)*, 838 A.2d 598, 602 (Pa. 2003). Under the Act, an employer is liable for WC benefits where a claimant "establish[es]: (1) [s]he was injured while in the course of employment, and (2) the injury resulted in a loss of earning power." *Bryn Mawr Landscaping Co. v. Workers' Comp. Appeal Bd. (Cruz-Tenorio)*, 219 A.3d 1244, 1252-53 (Pa. Cmwlth. 2019). Under Section 306(a)(1) of the Act, 77 P.S. § 511(1), "[w]here an employee is totally disabled, meaning that the injury results in a total loss of earning power for a period of time, . . . she is entitled to receive [total disability] benefits until the disability ceases." *City of Erie*, 838 A.2d at 602-03 (footnote omitted).

Section 306(c) of the Act also provides a schedule to compensate injured employees for permanent losses. *See* 77 P.S. § 513. Because "specific loss benefits are recognized as compensation 'for the *loss of use* of designated bodily members rather than for general loss of earning power,'" they "are payable without regard to whether the permanent injury has actually caused a wage loss." *Allegheny Power Serv. Corp. v. Workers' Comp. Appeal Bd. (Cockroft)*, 954 A.2d 692, 702 (Pa. Cmwlth. 2008) (quoting *Turner v. Jones & Laughlin Steel Corp.*, 389 A.2d 42, 43 (Pa. 1978)).

Moreover,

[i]t is well established that in matters involving specific loss claims, a claimant who sustains an injury that is compensable under Section 306(c) of the Act . . . (relative to specific loss calculations), is not [also] entitled to compensation beyond that specified in that section[,] even though [she/]he may be totally disabled by the injury.

*Pocono Mountain Sch. Dist. v. Workers' Comp. Appeal Bd. (Easterling)*, 113 A.3d 909, 914 (Pa. Cmwlth. 2015) (quoting *Sharon Steel Corp. v. Workers' Comp. Appeal*

4

*Bd. (Frantz)*, 790 A.2d 1084, 1088 (Pa. Cmwlth. 2002)). This occurs because "[i]njuries, including those that result in a loss of earning power, that normally flow from the specific loss injuries are considered compensated under specific loss benefits." *Lindemuth v. Workers' Comp. Appeal Bd. (Strishock Coal Co.)*, 134 A.3d 111, 121 (Pa. Cmwlth. 2016).

However, "[a]n exception to the general rule provides that a claimant may also receive benefits for injuries that are separate and distinct from those that flow from the specific loss injury." *Steets I*, 257 A.3d at 1277. Thus, where, as here, "if a claimant suffers an injury that is separate and apart from a specific loss of a body part that results in a loss of earning power, a claimant may receive compensation under Section 306(a) of the Act, 77 P.S. § 511[] (related to total disability) . . . , in addition to benefits for the specific loss of a body part."[6] *Lindemuth*, 134 A.3d at 121. In such case, Section 306(d) of the Act declares that "the number of weeks for which compensation is specified for the [specific loss] shall begin at the end of the period of temporary total disability which results from the other separate injuries[.]" 77 P.S. § 513(d); *see also Coker v. Workers' Comp. Appeal Bd. (Duquesne Light Co.)*, 856 A.2d 257, 261 (Pa. Cmwlth. 2004) (Where a single work-related incident has caused multiple, separate and distinct injuries, payment of specific loss benefits does not begin until after the claimant's receipt of total disability payments ends.).

Generally,

[u]nder Section 307 of the Act, . . . when a claimant receiving temporary total disability benefits dies *from work-related causes*, her death creates an independent right for [widowers, and/or] surviving children[/dependents] to claim survivors' benefits. The Act prescribes the computation and recipients of the

---

[6] "[T]otal or partial disability ends at the death of the worker." *City of Scranton v. Workmen's Comp. Appeal Bd. (Rideski)*, 638 A.2d 944, 946 (Pa. 1994).

5

survivors' benefits, which are obtainable by filing a fatal claim petition . . . . [*See*] 77 P.S. § 561[.][7]

*Kinzler, Tr. for Kinzler v. Workers' Comp. Appeal Bd. (Ass'n for Vascular Access)*, 245 A.3d 389, 398 (Pa. Cmwlth. 2021) (citation omitted). Section 307(7) of the Act adds that when an employee without dependents dies as a result of his/her work injury, the employer shall pay up to $7,000.00 in reasonable burial expenses. *See* 77 P.S. § 561(7).[8]

---

[7] "A surviv[or's] [] right to compensation is a separate cause of action and is not dependent upon [a] decedent[] having received [WC]." *Antonucci v. Workmen's Comp. Appeal Bd. (U.S. Steel Corp.)*, 576 A.2d 401, 403 n.4 (Pa. Cmwlth. 1990); *see also Kujawa v. Latrobe Brewing Co.*, 312 A.2d 411 (Pa. 1973). This Court has observed: "In contrast to Section 3[07] of the Act, . . . which states plainly that fatal claim compensation benefits are to be paid to [categories of survivors set forth in the statute]," *Kinzler, Tr. for Kinzler v. Workers' Comp. Appeal Bd. (Ass'n for Vascular Access)*, 245 A.3d 389, 399 (Pa. Cmwlth. 2021),

> under Section 306(g) of the Act, . . . when a claimant dies of a cause *not related to her work injury*, any specific loss benefits *to which she was already entitled*, but which she did not collect, are heritable. 77 P.S. § 541; *Est*[.] *of Harris* [*v. Workers' Comp. Appeal Bd. (Sunoco, Inc.)*], 845 A.2d [239,] 244 [(Pa. Cmwlth. 2004)]. [A] claimant's death from non-work-related causes does not convert or alter the character of pending specific loss benefits into funds receivable by the surviving recipient *in the survivor's own right*. [(Quotation marks omitted).] . . . Thus, such compensation is expressly *not* paid to the survivors in their own rights.

*Id.* (emphasis in original). Here, the Estate has not established any independent or derivative right to Claimant's WC benefits.

[8] Specifically, Section 307 of the Act states, in pertinent part:

> In case of death, compensation shall be computed on the following basis, and distributed to the following persons:
>
> . . . .
>
> (7) Whether or not there be dependents as aforesaid, the reasonable expense of burial, not exceeding seven thousand dollars ($7,000[.00]), which shall be paid by the employer or insurer directly to the undertaker (without deduction of any amounts theretofore paid for compensation or for medical expenses).

77 P.S. § 561.

"The survivability of specific loss benefits is treated separately in the Act." *Est. of Harris v. Workers' Comp. Appeal Bd. (Sunoco, Inc.)*, 845 A.2d 239, 243 (Pa. Cmwlth. 2004). Section 306(g) of the Act provides, in relevant part:

> **Should the employe die from some other cause than the injury**, **payments of compensation to which the deceased would have been entitled to under** [S]ection **306(c)(1) to (25)** [of the Act] **shall be paid to** . . . persons who at the time of the death of the deceased were **dependents** . . . :
>
> . . . .
>
> (7) **If there be no dependents** eligible to receive payments under this section[,] then the payments **shall be made to the estate of the deceased but in an amount not exceeding reasonable funeral expenses** as provided in this [A]ct . . . .

77 P.S. § 541 (emphasis added).

In addition, Section 410 of the Act states, in pertinent part: "In case any claimant shall die before the final adjudication of his[/her] claim, the amount of compensation due such claimant to the date of death shall be paid to the dependents entitled to compensation, or, if there be no dependents, then to the estate of the decedent." 77 P.S. § 751. In *Estate of Harris*, this Court expressly ruled that "[Section 410 of the Act] *does not provide an independent or supporting basis for a specific loss award . . . .*" *Id*. at 243 (quoting *Endres v. Workmen's Comp. Appeal Bd. (City of Phila.)*, 677 A.2d 901, 903 (Pa. Cmwlth. 1996) (emphasis added)).

The *Endres* Court explained:

> Section 306(d) of the Act sets forth a schedule for collecting total disability benefits and specific loss benefits and provides that the payment of specific loss benefits is to commence at the end of the temporary total disability. Therefore, Section 306(d) [of the Act] merely sets forth the timetable for when specific loss payments are to begin. **Section 410 of the Act** is a general provision

7

which states that benefits due to a claimant who dies before final adjudication of his or her claim are payable to the claimant's estate or dependents. This statutory provision **does not provide an independent or supporting basis for a specific loss award** . . . .

**Section 306(g) [of the Act] relates directly to the receipt of specific loss benefits and is**, **therefore**, **a more particular provision**.[FN]2 Enacted by the 1972 amendments . . . , Section 306(g) [of the Act] specifically addresses the receipt of specific loss benefits by an injured employee's dependents if the injured employee dies from causes unrelated to the work injury. Further, this Court held in *Burns International Security Services, Inc. v. Workmen's Compensation Appeal Board (Crist)*, . . . 469 A.2d 336 ([Pa. Cmwlth.] 1984), that specific loss benefits are payable to survivors pursuant to Section 306(g) of the Act where the decedent's death is from a cause other than the work injury.[9]

> [FN]2 Section 1933 of the Statutory Construction Act of 1972 [(SCA]), 1 Pa.C.S. § 1933, provides that when there is a conflict between general and special provisions of a statute, "the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail."

*Endres*, 677 A.2d at 903 (emphasis added; citation omitted). In addition, because the WCJ in the instant case adjudicated Claimant's total disability and specific loss

---

9 *See also City of Scranton* (wherein the Pennsylvania Supreme Court ruled that the claimant's death terminated his total disability, making his specific loss benefits payable, and, since specific loss payments could not be made directly to him, they were payable to his surviving spouse pursuant to Sections 306(c) and 306(g) of the Act). *City of Scranton* is distinguishable from the instant fact pattern in that the claimant *had a survivor with a statutory right to his specific loss benefits*, and the claimant's death was *unrelated* to his work injuries and, thus, fell squarely under Section 306(g) of the Act.

8

claims *before* Claimant died, Section 410 of the Act, by its express terms, does not control.[10]

In *Estate of Harris*, this Court held that the holding in *Endres* was firmly grounded in precedent "stand[ing] for the legal conclusion that **Section 306(g) of the Act** governs the payment of **specific loss benefits** and that such benefits **may be paid only where death of the employee is from a cause other than the work injury**." *Id*. at 244 (emphasis added). The *Estate of Harris* Court further declared:

> Under the statutory construction principle *expressio unius est exclusio alterius*, we must find that **because the General Assembly conditioned payment of specific loss benefits on a death by cause *other* than the work injury that it intended to exclude the alternative**, *i.e*., **death by the work injury**. There is a sound reason for this canon of construction; without it, the Act would have been twice as long because its drafters would have been required to couple every declarative sentence with its obverse.

*Id*. (emphasis added).

The *Estate of Harris* Court summarized:

> **Where a claimant is awarded specific loss [benefits] and dies without a dependent**, **the specific loss benefit is to be made "to the estate of the deceased but *in an amount not exceeding reasonable funeral expenses* . . . ."** Section 306(g) of the Act, 77 P.S. § 541(7) (emphasis added). [The c]laimant died without dependents. **Accordingly**, [the e]mployer's obligation to pay **specific loss benefits**, had they been **awarded prior to [the claimant's] death**, would have been **satisfied by the payment** it has already made **to the [e]state for**

---

[10] The Majority agrees with the Dissent that Section 410 of the Act *might* apply if Claimant had died *before* her specific loss claim was adjudicated, and *if* this Court had not ruled that Section 306(g) of the Act more specifically applies over Section 410 of the Act. However, Claimant's specific loss claim *was* adjudicated before she died, and the *Endres* Court *did* rule that Section 306(g) of the Act more specifically applies over Section 410 of the Act. *See Endres*; *see also Est. of Harris*.

9

> **reasonable funeral expenses**. Accordingly, there is nothing further to be gained by making a specific loss benefit award to the [e]state.
>
> The [e]state would have this Court create a new category of claim, *i.e.*, payment of specific loss benefits to an estate . . . where death is caused by the work-related injury and not by another cause. [Such] claim has no grounding in the language of the Act and is at odds with case law precedent. **The General Assembly has spoken**, **and we are so bound**.

*Id*. at 244-45 (bold emphasis added).

Thus, based on Section 306(g) of the Act and applicable precedent, when an employee dies due to a work injury while collecting total disability benefits and before specific loss benefits are payable, the only specific loss payments due are reasonable (up to $7,000.00) funeral expenses to be paid to the funeral home. This does not offend the Act's "humanitarian objective . . . to benefit the injured worker." *Burgess v. Workers' Comp. Appeal Bd. (Patterson-UTI Drilling Co. LLC)*, 231 A.3d 42, 46 (Pa. Cmwlth. 2020) (quoting *Whitfield v. Workers' Comp. Appeal Bd. (Tenet Health Sys. Hahnemann LLC)*, 188 A.3d 599, 616 (Pa. Cmwlth. 2018)).

Here, Claimant was receiving total disability benefits, and was awarded specific loss benefits that would commence after her total disability ceased. *See Steets I*. Claimant's work-related injuries caused her death. She had no dependents with rights to either her total disability or specific loss benefits when she died. Under such circumstances, Employer's only statutory obligation was to pay $7,000.00 in funeral expenses to the funeral home, which it did.

Accordingly, the WCJ properly granted the Claim Petition and dismissed the Review and Penalty Petitions, concluding:

> 4. Section 306(g) of the [Act] provides that specific loss benefits can be paid to the same category of dependent persons listed in [Section] 307 of the Act, but only where

10

"the [e]mployee [should] die from some other cause than the injury . . . [.]" 77 P.S. [§] 541.

5. There is nothing in the Act that requires an [e]mployer to pay specific loss benefits in a case where the injured worker died as a result of the work injury that caused the specific loss. Claimant's [c]ounsel has argued that the right to the specific loss benefit became vested when it was awarded by [the WCJ in *Steets I*] and that the vested right passed from Claimant to her estate. Claimant's [c]ounsel has attempted to distinguish this case from other cases because, in this case, the specific loss benefits were awarded prior to Claimant's death. There is nothing in the language of the Act or in the case law interpreting the Act that supports this view. Furthermore, even if this argument w[as] accepted, there is nothing in the statutory scheme of [WC] that would require the payment of these benefits to anyone except dependents. Since it is undisputed that [] Claimant had no dependents, [Employer] is not obligated to pay the specific loss benefits.

6. Since [Employer] did not dispute its obligation to pay the funeral benefits, and since the [E]state has not shown a violation of the Act on the part of [Employer], the Penalty Petition must be dismissed.

WCJ Dec. at 4 (Claimant's Br. Appendix A-13).

Notwithstanding, the Estate argues that specific loss benefits should be payable following an injured worker's death that resulted from the work injury. Specifically, the Estate asserts that since the practical effect of *Estate of Harris* is "to . . . provide greater benefits to workers who die from non-work-related causes than those whose injuries ultimately cause their death[,]" which is inconsistent with the Act and its humanitarian purposes and the principles of statutory construction, this Court should clarify *Estate of Harris*, and apply its holding only to situations in which an injured worker dies from a cause other than a work-related injury, while still permitting the estates of injured workers who die as a result of their work-related injuries to receive previously awarded specific loss benefits. Employer Br. at 9.

11

While this case is certainly tragic, the instant appeal is not the vehicle for this Court to revisit or reinterpret *Estate of Harris*. The Estate has failed to identify any legal basis consistent with the Act's express language for this Court to do so.[11] *Estate of Harris* is precedential. "*Stare decisis* 'maintains that for purposes of certainty and stability in the law, a conclusion reached in one case should be applied to those which follow, if the facts are substantially the same.'" *Bold v. Dep't of Transp., Bureau of Driver Licensing*, 285 A.3d 970, 979 n.9 (Pa. Cmwlth. 2022) (quotation marks omitted) (quoting *Stilp v. Commonwealth*, 905 A.2d 918, 966-67 (Pa. 2006)). The circumstances presented to this Court in *Estate of Harris* are nearly identical to those now before the Court. Harris sustained work-related injuries for which the employer paid her total disability benefits until her death due to her work-related injuries. Because Harris died without statutory dependents, the estate paid her funeral expenses.[12] The *Estate of Harris* Court thoroughly examined *Endres*, *Burns International*, and *City of Scranton v. Workmen's Compensation Appeal Board (Rideski)*, 638 A.2d 944 (Pa. 1994), in reaching its decision, which was consistent with this Court's interpretations of Sections 306(c)-(d), 306(g) and 307 of the Act, and upheld the WCJ's decision that the estate was only entitled to statutory

---

[11] Section 1921(a) of the SCA provides that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. § 1921(a). Section 1921(b) of the SCA states: "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b).

[12] The Majority disagrees with the Dissent that *Estate of Harris* "is readily distinguishable from the instant matter" and does not apply here. *Steets v. Workers' Comp. Appeal Bd.*, __ A.3d __ (Pa. Cmwlth. No. 512 C.D. 2022, filed May 8, 2023), slip op. at 4 (Ceisler, J., dissenting). The *Estate of Harris* Court expressly considered what would have happened if specific loss benefits had been awarded to Harris before she died, and declared that because "[the c]laimant died [due to her work-related injuries] without dependents[,] . . . [the e]mployer's obligation to pay specific loss benefits, had they been awarded prior to Harris' death, would have been satisfied by the payment it has already made to the [e]state for reasonable funeral expenses." *Est. of Harris*, 845 A.2d at 245.

12

funeral expenses. Thus, *Estate of Harris* is not distinguishable on its facts or the law.

This Court acknowledges that "[w]hile *stare decisis* serves invaluable and salutary principles, it is not an inexorable command to be followed blindly when such adherence leads to perpetuating error." *Stilp*, 905 A.2d at 967. However, *Estate of Harris* does not perpetuate any error. Legal scholars have observed:

> The Act is to be "liberally construed, with borderline interpretations resolved in favor of the injured employe." [*Turner*, 389 A.2d at 47.] . . . [I]t may seem at first blush that an outcome that results in less compensation to a worker who dies from a work-related injury than to a worker who dies from some other cause would be contrary to a "liberal" construction of the Act.
>
> However, . . . the language of the Act yields a clear result[,] and, although [*Estate of*] *Harris* may be a case of first impression, it is resolvable with respect to the language of the Act. Moreover, the outcome in [*Estate of*] *Harris* does not run afoul of the remedial purpose of the Act.
>
> Th[e *Estate of Harris* C]ourt's application of [S]ection 306(g) [of the Act] closely tracks the language of the statute. Given the facts, it was difficult for the [e]state [therein] to formulate an intellectually coherent way to surmount the [] requirements of [S]ection 306(g) [of the Act]. Accordingly, [*Estate of*] *Harris* was really decided on the facts and did not present a difficult case of statutory interpretation. Therefore, [*Estate of*] *Harris* did not present a "borderline interpretation [] [to be] resolved in favor of the injured employee."
>
> Moreover, the outcome in [*Estate of*] *Harris* did not infringe on the remedial purpose of the Act. The provision for the survival of the specific loss election for dependents in [S]ection 306(g) [of the Act] is intended to protect dependents where an injured worker dies of a cause other than the work-related injury.
>
> The survival provision in [S]ection 306(g) [of the Act] is augmented by a death benefit for dependents in cases

13

> where the injured worker dies of a work-related injury. Therefore, whether the worker dies of the work-related injury or some other cause, a benefit or advantage is preserved for the statutory dependents. Accordingly, at least with respect to dependents, the [*Estate of*] *Harris* decision does not fail to achieve the remedial purpose of the Act.
>
> . . . . [T]he Act's more generous treatment of dependents is not irrational and may reflect an effort to balance the cost of the [WC] program with the protection of those most vulnerable to the harm occasioned by work-related injuries. Moreover, should it be necessary or desirable to harmonize the treatment of dependents and non-dependents under the Act, the legislature would be in the best position to do so because it is the more politically accountable branch.

Yen T. Lucas, *Est. of Harris v. Workers' Comp. Appeal Bd. (Sunoco, Inc. & Esis/Signa): Survival of Specific Loss Claims*, 15 Widener L.J. 519, 528-30 (2006) (footnotes omitted).

The General Assembly stated its intention in Section 306(g) of the Act, and, despite this Court's rulings in *Endres* (in 1996) and *Estate of Harris* (in 2004), to date, the General Assembly has not taken steps to change its effect.

> It is a well[-]established principle of statutory interpretation that [courts] "may not supply omissions in the statute when it appears that the matter may have been intentionally omitted." *Sivick v. State Ethics Comm*[*'*]*n*, 238 A.3d 1250, 1264 (Pa. . . . 2020). **It is not** [**the courts'**] **role under our tripartite system of governance to engage in judicial legislation and to rewrite a statute in order to supply terms which are not present therein**[.]

*In re Nov. 3, 2020 Gen. Election*, 240 A.3d 591, 611 (Pa. 2020) (emphasis added); *see also Lower Swatara Twp. v. Pa. Lab. Rels. Bd.*, 208 A.3d 521, 529 n.12 (Pa. Cmwlth. 2019) (quoting *Bender v. Pa. Ins. Dep't*, 893 A.2d 161, 164 (Pa. Cmwlth. 2006) ("Th[is C]ourt may not rewrite a statute[.]"); *Mercurio v. Allegheny Cnty. Redevelopment Auth.*, 839 A.2d 1196, 1203 (Pa. Cmwlth. 2003) (quoting *Fischer v.*

14

*Dep't of Pub. Welfare*, 482 A.2d 1148, 1161 (Pa. Cmwlth. 1984) ("It is not within the jurisdiction of this Court to rule on the wisdom of legislative enactments. 'The judiciary may not sit as a super legislature to judge the wisdom or desirability of legislative policy determinations . . . .'").

Based on the foregoing, the Board's order is affirmed.

_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kristina Steets,                                    :
                        Petitioner                  :
                                                    :
            v.                                      :
                                                    :
Celebration Fireworks, Inc. (Workers'              :
Compensation Appeal Board),                        :    No. 512 C.D. 2022
                        Respondent                  :

## O R D E R

AND NOW, this 8th day of May, 2023, the Workers' Compensation Appeal Board's April 26, 2022 order is affirmed.

_____

ANNE E. COVEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kristina Steets,                          :
                          Petitioner      :
                                          :
        v.                                :   No. 512 C.D. 2022
                                          :
Celebration Fireworks, Inc.               :
(Workers' Compensation                    :
Appeal Board),                            :
                          Respondent      :   Argued:  March 8, 2023

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE LORI A. DUMAS, Judge
           HONORABLE STACY WALLACE, Judge

DISSENTING OPINION
BY JUDGE CEISLER                          FILED:  May 8, 2023

        Respectfully, I dissent from the majority because I believe that Section 410 of the Workers' Compensation Act (Act)[1] authorizes the payment of specific loss benefits following the work-related death of a claimant.  Accordingly, I would reverse the order of the Workers' Compensation Appeal Board (Board) and direct the payment of specific loss benefits to the estate of Kristina Steets (Steets).

        Section 410 of the Act relevantly provides that, if a claimant dies before the final adjudication of her claim, the amount of compensation due "to the date of death shall be paid" to the claimant's dependents or, in the absence of dependents, to the claimant's estate.  77 P.S. § 751 (emphasis added).  The language in Section 410 does not condition the payment of compensation upon a specific cause of death.  This

_____
[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 751.

Court reviewed Section 410 in *White v. Workers' Compensation Appeal Board (Good Shepherd Rehabilitation Hospital)*, 666 A.2d 1128 (Pa. 1995), in which a claimant's estate sought payment of total disability benefits owed at the time of her death. A workers' compensation judge (WCJ) denied the claim, reasoning that Section 410 "applies only to specific loss claims and death claims." *Id.* at 1129. Although we affirmed the WCJ on other grounds,[2] we agreed with the claimant's estate that "**Section 410's scheme of distribution applies to all claims regardless of the nature of the loss**[,]" including specific loss benefits, fatal claims, and total disability benefits. *Id.* at 1130 (emphasis added).

Instantly, at the time Steets died, Celebration Fireworks, Inc.'s (Employer) challenge to a WCJ's award of specific loss benefits was pending before this Court. Therefore, Steets died prior to a final adjudication of her claim for specific loss benefits.[3] Per Section 306(d) of the Act,[4] specific loss benefits are not paid until a claimant's period of total disability has ended. Specific loss benefits are not intended to compensate a claimant for loss of earning power; rather, such benefits are intended to specifically compensate a claimant for the loss of use of a designated body part, rather than for the general loss of earning power. *Shaffer v. Workmen's Comp Appeal Bd. (Silver & Silver, Inc)*, 588 A.2d 1029, 1032-33 (Pa. Cmwlth. 1991). The relevant language in Section 410 only becomes operable following a claimant's

---

[2] This Court concluded that the claimant's widower was not a "dependent" under the Act and that the deceased claimant's benefits should be paid to her estate. *White*, 666 A.2d at 1131.

[3] In arguing that Section 410 does not apply in this matter, Employer suggests that a final adjudication of Steets' claim was rendered, because Employer accepted liability for her work injury and it was paying her total disability benefits when she died. Such an argument lacks credibility, given that Employer's appeal of the WCJ's award of specific loss benefits was pending before this Court when Steets died.

[4] 77 P.S. § 513.

death and, unlike Section 306(g).  As noted herein, Section 410 does not distinguish between a work-related death or one that is wholly unrelated to the work injury. Therefore, under Section 410, if a claimant dies prior to final adjudication of a claim, whatever the cause, the claimant's dependents or estate "shall be paid" the amount of compensation due "to the date of death[,]" regardless of the nature of the loss.  77 P.S. § 751; *White*, 666 A.2d at 1130.

A review of Section 306(g)'s legislative history supports my conclusion that the General Assembly did not intend to prevent the payment of specific loss benefits to the dependents or estate of a claimant whose death was caused by the work injury. Section 306(g) of the Act was amended by the Act of March 29, 1972, P.L. 159, No. 12 (Act 12).  Prior to Act 12's enactment, Section 306(g) provided that, "[s]hould the claimant die from some other cause than the injury, the liability for compensation shall cease."  *See* Petitioner's Post-Argument Submission, Ex. B.[5]  Act 12 revised Section 306(g) to include the current language, which permits the payment of compensation "to which the deceased would have been entitled" to the deceased claimant's dependents.  77 P.S. § 541.  Critically, while Act 12 effectuated minor amendments to Section 410, it made no changes to the language relevant in the instant appeal.  Therefore, prior to the enactment of Act 12 and the revisions to Section 306(g), the Act contained no language to suggest that specific loss benefits did not survive the work-related death of a claimant.

"The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly."  1 Pa.C.S. § 1921(a); *Commonwealth v. McCoy,* 962 A.2d 1160, 1167–68 (2009).  The plain language of

---

[5]  *See also* Senate Bill 1048, Session of 1971, Printer's No. 1631. https://www.legis.state.pa.us/cfdocs/legis/PN/Public/btCheck.cfm?txtType=HTM&sessYr=1971&sessInd=0&billBody=S&billTyp=B&billNbr=1048&pn=1631 (last visited May 5, 2023).

a statute generally provides the best indicator of legislative intent. *Id.* at 1166. A change in the language of a statute ordinarily indicates a change in legislative intent. *Masland v. Bachman*, 374 A.2d 517 (Pa. 1977). Presumably, if the General Assembly intended that the revisions to Section 306(g) would effectuate a change to the application of Section 410, it would have included language to that effect. Nothing in Act 12 suggests such an intent, given that the relevant portion of Section 410 was left untouched. Thus, the changes to Section 306(g) wrought by the passage of Act 12 indicates a legislative intent to provide for the survivability of specific loss benefits, *without regard to the claimant's cause of death*, and not an intent to revoke the survivability of specific loss benefits from the dependents or estate of a claimant whose work injury resulted in death.

Moreover, the case upon which the majority relies, *Estate of Harris v. Workers' Compensation Appeal Board (Sunoco, Inc.)*, 845 A.2d 239 (Pa. Cmwlth. 2004), is readily distinguishable from the instant matter. Unlike Steets, the claimant in *Estate of Harris*, Rosalie Harris (Harris), had not been awarded specific loss benefits at the time she died, nor had she filed a claim petition seeking specific loss benefits. This Court recognized that, if Harris had died before her final total disability payment was made, her employer would be required to make the payment by operation of Section 410. Further, although we acknowledged that the "dependent of a deceased employee" could elect to receive specific loss benefits in lieu of total disability, we rejected the argument that Harris' estate should be permitted to make such an election on her behalf. *Id.* at 243. We noted that Section 410 of the Act generally provides for the payment of benefits owed to a claimant who dies prior to the final adjudication of his or her claim. *Id.* Section 410 does not, however, "*provide an independent or supporting basis for a specific loss*

*award*[.]" *Id.* at 243 (emphasis in original) (quoting *Endres v. Workmen's Comp. Appeal Bd. (City of Philadelphia)*, 677 A.2d 901, 903 (Pa. Cmwlth. 1996)).[6]  In effect, because Harris was not awarded specific loss benefits prior to her death, the issue of whether previously-awarded specific loss benefits could survive the work-related death of a claimant was not before this Court.

For the reasons outlined above, I respectfully dissent.

_____
ELLEN CEISLER, Judge

President Judge Cohn Jubelirer joins in this dissent.

---

[6] *Endres* involved circumstances similar to those in *Estate of Harris*, in that the decedent in *Endres* was not awarded specific loss benefits prior to his death and, therefore, specific loss benefits were not "due" at that time.